# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **AUDREY RAYFORD, ET AL.** | * | **CIVIL ACTION NO.  15-2835** |
| **VERSUS** | * | **JUDGE ROBERT G. JAM ES** |
| **KARL STORZ ENDOSCOPY AMERICA, INC., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6), [doc. # 8], filed by defendants Karl Storz Endoscopy of America, Inc. ("KSEA"), and Karl Storz Endovision ("KSE") (collectively referred to herein as "Defendants") and a motion to strike Plaintiffs' First Supplemental and Amended Complaint [doc. # 21] filed by Defendants. The motion to dismiss is opposed.  For reasons assigned below, the motion to strike is DENIED,[1] and it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

### Background

On December 15, 2015, Audrey Rayford and Darryl Rayford filed a complaint against Defendants asserting that Defendants' Rotocut G1 power morcellator, used during Audrey Rayford's laparoscopic supracervical hysterectomy procedure on December 14, 2014, was defective and caused her significant injury. [doc. # 1, p. 3]. The complaint alleges that because

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

Defendants' defective and unreasonably dangerous surgical instrument was used during Audrey Rayford's procedure, the uterine cancer diagnosed very shortly after the procedure spread more quickly within her body cavity than it would otherwise have done. *Id.*

Plaintiffs claim in Count I of their complaint that Defendants are liable on several theories of recovery under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. Ann. § 9:2800.51, *et seq. Id.* at 5. In Count II Plaintiffs assert non-LPLA claims that Defendants are strictly liable to Plaintiff Audrey Rayford based on Defendants' alleged failure(s) "to properly and adequately design . . . the Rotocut GI morcellator," as well as Defendants' alleged failure to provide "proper and adequate warnings" regarding the morcellator. *Id.* at 10. In Counts III and IV, Plaintiffs contend that Defendants are liable for breaches of both express and implied warranty [doc. # 1, p. 11], and in Count V, Plaintiffs contend Defendants are liable for "fraudulent misrepresentation and omission." *Id.* at 13. Finally, Plaintiffs allege they are entitled to punitive damages (Count VII), and that Mr. Rayford is entitled to damages for loss of services/consortium (Count VI). *Id.* at 14-15. Plaintiffs seek damages for past and future medical expenses, loss of enjoyment of life, loss of services, mental anguish, emotional distress, other non-economic damages, increased risk of death and/or spread of cancer, and past and future mental and physical pain and suffering. *Id.* at 4.

On February 25, 2016, Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). [doc. # 8]. Plaintiffs filed their opposition on April 1, 2016. [doc. # 16]. Defendants filed their reply on April 21, 2016. [doc. # 25]. Defendants filed a motion to strike Plaintiffs' Amended Complaint [doc. # 21] on April 14, 2016, and Plaintiffs' opposed the motion on May 5, 2016. [doc. # 31].

Thus, the matters are ripe.

**I.      Motion to Strike**

Defendants seek to strike the amended complaint on the grounds that it is untimely, failed to seek defendants' consent and was filed without leave of court. [doc. # 21-1]. Plaintiffs filed an amended complaint without leave of court, after the original complaint was answered on March 30, 2016. [doc. # 15].

Although an amended pleading filed without leave of court generally has no legal effect, the Fifth Circuit in *United States v. Healthsouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) recognized an exception to this rule when leave "'would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change.'" *Id.* at 295, *quoting* 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1484, at 601 (2d ed. 1990).

The Amended Complaint adds no additional theories of relief, though it does include additional factual details concerning the claims under the LPLA. The original complaint notified Defendants of the factual basis and the legal grounds for the Plaintiffs' claims. The amendment did not include any conduct, transaction or occurrence not set out in the original complaint, or change the nature of Plaintiffs' claims; it merely fleshed out those claims; thus, it does not appear that any of the parties will be prejudiced by allowing the amendment.  In addition, prior to dismissing a claim for failure to state a claim, this court would ordinarily allow a plaintiff to amend the complaint, if doing so would be likely to cure the deficiencies in the original complaint. This court is obliged to "freely" grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity

to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . " *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th  Cir. 2002).  The Court therefore would have granted the plaintiffs leave to amend had it been sought. For these reasons, the Motion to Strike the Amended Complaint is **DENIED**.


## 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

*supra*. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[2] Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. In addition, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred

---

[2] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## Law and Analysis

**II.   Louisiana Law Applies to Substantive Issues**

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S. Ct. 2211 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938). The parties in this matter implicitly agree that the disputed issues are governed by the substantive law of Louisiana.[3] *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

Because Louisiana law applies, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante,* is a secondary law source in Louisiana." *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 246 (5th Cir. 2014) (citation omitted). Thus, this court must look first to the LPLA, and only secondarily to judicial decisions (i.e., decisions of the Louisiana Supreme Court). *Id.*, *see also Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

**III.   Defendants as Manufacturers**

---

[3]  Both sides analyzed plaintiff's claims pursuant to Louisiana law, with the exclusion of Plaintiffs' punitive damages claim.

In order to be held liable under the LPLA, Defendants must be considered manufacturers as defined in the statute. Based on a review of Plaintiffs' Complaint and Amended Complaint, plaintiffs are apparently uncertain whether the defendants are manufacturers or merely sellers and have therefore pled both statuses in the alternative.  This Court cannot determine from the pleadings whether Defendants will be considered  manufacturers under the LPLA; such a determination will require further factual development of the record. However, the fact that the Defendants' status as a manufacturer is unresolved does not preclude Plaintiffs from alleging claims under the LPLA or under non-LPLA law, rather, Plaintiffs are entitled to plead all theories of potential recovery, even if such theories conflict. *See Cusimano v. NeilMed Pharm., Inc.*, 2012 WL 5398440 *1 (E.D. La. Nov. 2, 2012). Therefore, the Court must consider all of Plaintiffs' potential claims.

## IV.   Theories Under the LPLA

To hold a manufacturer liable under the LPLA, a plaintiff must establish: "damage proximately caused by a characteristic of the product that rendered its product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R. S. 9:2800.54(A). Liability may attach, if and only if (among other requirements) the product is unreasonably dangerous: 1) in construction or composition, 2) design, 3) because of an inadequate warning, or 4) because it fails to conform to an express warranty. La. R. S. 9:2800.54(B). Ultimately, a cause of action under the LPLA requires proof:

1.      that the defendant is a manufacturer of the product;

2.      that the claimant's damage was proximately caused by a characteristic of

7

the product;

3.      that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and

4.      that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson*, 106 F.3d at 1251.

In this case, Defendants contend that Plaintiffs did not allege facts sufficient to show a characteristic of the product that rendered it unreasonably dangerous, and consequently, how Plaintiffs' damages were caused by this unspecified characteristic(s). The court will analyze the sufficiency of Plaintiffs' allegations as to each of the LPLA's four categories of defects.

      a)      <u>Construction or Composition</u>

According to the LPLA, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. § 9:2800.55. Thus, "[t]o prevail under the construction or composition theory, Louisiana courts require the plaintiff to (i) set forth the manufacturer's specifications for the product and (ii) demonstrate how the product materially deviated from those standards so as to render it unreasonably dangerous." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 698 (5th Cir. 2012) (citations and internal quotation marks omitted). A material deviation is one that increases the propensity for injury. *Id.* Absent factual allegations addressing how the product deviated from the Defendants' normal production standards, a plaintiff fails to meet the plausibility standard. *Watson v. Bayer Healthcare Pharm., Inc.*, 2013 WL 1558328 *4 (E.D. La. Apr. 11, 2013).

8

In *Butler*, the plaintiff sought damages for the alleged failure of the defendant's contraceptive product. *Butler v. Louisiana State Univ. Health Sciences Ctr.*, 2012 WL 3263888 *3 (W.D. La. Aug. 9, 2012). In ruling on the defendant's motion to dismiss, the court found that the plaintiff's complaint did not identify the nature of the defect, how the defect made the product unreasonably dangerous, or explain how the product caused the alleged injuries. *Id.* Such claims did not satisfy the standards set under *Twombly* and *Iqbal*. *Id.*

In *Watson*, the plaintiff used a birth control product inserted by her doctor. *Watson*, 2013 WL 1558328, at *1–2. The plaintiff claimed that the product's "condition when sold to her was the proximate cause of [her] injuries." *Id.* at *4. The court stated that the plaintiff failed to sufficiently allege facts explaining how the unknown manufacturing defect caused her alleged injuries. *Id.* The court found that because the plaintiff failed to show how the product's condition deviated from the intended design, or how the defect caused her injuries, the motion to dismiss should be granted. *Id.*

Here, Plaintiffs allege that "Defendants marketed and promoted this product as a safe device to treat uterine fibroids, the same procedure performed on Ms. Rayford. Plaintiffs also allege that this device is, in fact, not safe and unreasonably dangerous and, because it deviated from the performance standards promoted by defendants, caused injury and economic loss to Plaintiffs." [doc. # 16, p. 5]. However, these allegations are not appreciably any more extensive than the assertions found wanting by the Fifth Circuit in another similar case:

> [3.] The hip prostheses contained a manufacturing defect in that it was manufactured in such a manner that impurities, residues and bacteria remained on the prosthesis in violation of the FDA standards and requirements and in violation of the manufacturing processes and design approved by the FDA.

[4.] The hip prostheses deviated, in its construction or quality, from the specifications or planned output. As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur as to the manufacturing defect contained in the hip prosthesis.

*Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011).

As the Fifth Circuit explained, the

complaint is impermissibly conclusory and vague; it does not specify the manufacturing defect; nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury. Nor does the complaint tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process.

*Funk, supra.*

Similar to the plaintiff in *Funk* and *Butler*, the Plaintiffs have simply stated the elements of a products liability claim without providing any factual allegations that the product deviated from the Defendants' normal production standards. Plaintiffs' complaint suffers from these same deficiencies, and thus fails to state a claim for relief under the LPLA for a defect in construction or composition.[4]

    b)    <u>Design</u>

Under the LPLA:

[a] product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of

---

[4] *See Kennedy v. Pfizer, Inc.*, Civ. Action No. 13-3132, 2014 WL 4092918 (W.D. La. Aug. 15, 2014); *Lirette v. DePuy Mitek, L.L.C.*, Civ. Action No. 13-2892, 2014 WL 5445777 (W.D. La. Oct. 20, 2014); *Scianneaux v. St. Jude Med. S.C., Inc.*, 961 F. Supp. 2d 808, 813 (E.D. La. 2013); *but see Bertrand v. Eli Lilly & Co.*, Civ. Action No. 12-0853, 2013 WL 4093556 (W.D. La. Aug. 13, 2013).

adopting such alternative design and the adverse effect, if any, of such alternative
design on the utility of the product. An adequate warning about a product shall be
considered in evaluating the likelihood of damage when the manufacturer has
used reasonable care to provide the adequate warning to users and handlers of the
product.

La. R.S. § 9:2800.56.

In the case at bar, Plaintiffs allege that, during the relevant period, there existed

alternative designs, including the surgical tissue bag and method which they allege has been in

use since 1991, which were both reasonable and feasible, and which would have prevented the

spread of malignant cells. [doc. # 15, p. 5].  The undersigned finds that Plaintiffs allege sufficient

facts to state a claim that the Defendants' morcellator was unreasonably dangerous in its design.


c)      Inadequate Warning

The LPLA details that

[a] product is unreasonably dangerous because an adequate warning about the
product has not been provided if, at the time the product left its manufacturer's
control, the product possessed a characteristic that may cause damage and the
manufacturer failed to use reasonable care to provide an adequate warning of such
characteristic and its danger to users and handlers of the product.

La. R. S. § 9:2800.57(A).

Thus, to "maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the

product in question has a potentially damage-causing characteristic and that the manufacturer

failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v.

Novartis Pharm. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002) (citation omitted). To satisfy the first

prong of this test, the plaintiff must allege facts as to the "cause, frequency, or consequences" of

the dangerous characteristic at issue. *Id*.

Plaintiffs contend that, on April 17, 2014, the FDA warned against the use of

morcellators in women undergoing a hysterectomy for the treatment of fibroids, which was the operation performed on Ms. Rayford. [doc. # 15, p. 4]. The FDA warning stated that there was "a risk that the procedure will spread the cancerous tissue within the abdomen and pelvis, significantly worsening the patient's long-term survival." *Id.* Plaintiffs contend that Defendants, with knowledge of the risks, continued to promote, sell, market and distribute their product for this procedure. [doc. # 16, p. 6]. Based on these allegations, the Court can reasonably infer that Defendants failed to provide an adequate warning of the dangers associated with the use of their product prior to the December 15, 2014, surgical procedure at issue in this case. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

For claims involving drugs or medical devices that are dispensed by a physician, Louisiana law applies the learned intermediary doctrine. *Guidry v. Aventis Pharm., Inc.*, 418 F. Supp. 2d 835, 840-841 (M.D. La. 2006). In the learned intermediary context, the plaintiff must show that 1) the defendant failed to warn or inadequately warned the physician of a risk associated with the product that was not otherwise known to the physician; and 2) the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury. *Id.*; *Phillips v. GlaxoSmithKline*, 2011 WL 110288 (W.D. La. Jan. 7, 2011).

At this stage in the proceedings, this Court must only determine, when viewing the well-pleaded facts as true and in a light most favorable to Plaintiffs, whether the claims meet the minimal threshold of plausibility. With this standard in mind, the Court finds that Plaintiffs have sufficiently pled an inadequate warning claim against Defendants pursuant to the LPLA. *See*

12

*Ivory v. Pfizer Inc.*, 2009 WL 3230611, at *4 (W.D. La. Sept. 30, 2009)  (finding that the allegations in the complaint created a reasonable inference that the defendant failed to provide an adequate warning of the dangers associated with a drug). Defendants' argument based on the "learned intermediary doctrine" is premature at this stage of the proceedings. *Id.* Whether Plaintiff will ultimately be able to offer sufficient proof to support the claim is a matter the Court may more fully address within the context of a motion for summary judgment or a trial on the merits.

        d)    <u>Express Warranty</u>

        The LPLA specifies that

> [a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

La. R. S. § 9:2800.58.

        Plaintiff alleges that Defendants expressly warranted that their product was safe and effective for the procedure Ms. Rayford underwent. [doc. # 15, p. 4]. Additionally, "Plaintiff Audrey Rayford and the medical community justifiably relied on defendants' express representations and omissions in purchasing and using the uterine morcellator during plaintiff's surgery." [doc. # 1, p. 14]. Defendants argue that Plaintiffs have failed to allege the existence of an express warranty beyond general claims of safety and efficacy.

        This Court agrees with the holding on this issue in *Ivory*, 2009 WL 3230611. In *Ivory*, the court found that Twombly does not require the plaintiff to set forth such precise, detailed allegations with respect to the breach of express warranty claim. Instead, the court in *Ivory* found

that "Plaintiffs' factual allegations concerning Defendant's alleged breach of express warranty are more than enough at the pleading stage 'to raise a right to relief above the speculative level.'" *Id.* at \*5; *see also Harris v. Merck & Co., Inc.*, 2012 WL 5384720 (W.D. La. Nov. 1, 2012) (reaching a similar holding on the issue of the breach of an express warranty claim).

Upon due consideration, this Court finds that, while not particularly fulsome, there are sufficient facts alleged in the amended complaint to support a breach of express warranty claim. Plaintiffs allege that Defendants advertised and marketed their product as safe for the exact procedure at issue herein. [doc. # 1, p. 5]. Plaintiffs also allege, in a separate claim against Defendants, that Plaintiff and the medical community relied on Defendants' express representations that their product was safe. *Id.* at 14. These allegations sufficiently assert that Defendants expressly warranted its product to Ms. Rayford's surgeon for the procedure at issue, and that Plaintiffs sustained damages as a result of Ms. Rayford's surgeon's being induced to use the product by Defendants' express warranties.  Thus the court finds that Defendants' motion should be denied as to Plaintiffs' LPLA express warranty claim.

  e)      LPLA Exclusivity Provision

Plaintiffs also assert additional theories of liability in their complaint of strict products liability, breach of express warranty, breach of implied warranty and fraudulent misrepresentation and omission in Counts II-V of their complaint. [doc. # 1, p. 10-13]. However, the Louisiana Products Liability Act ("LPLA") provides the exclusive remedy against a manufacturer for damages caused by its product. La. R.S. 9:2800.52.  A plaintiff may not recover against a manufacturer of an allegedly defective product under any theory of liability that is not set forth in, and established by, the LPLA. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d

254, 261 (5th Cir. 2002).

"While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer." *Jefferson v. Lead Industries Association, Inc.*, 930 F.Supp. 241, 245 (E.D.La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997) (citations omitted). Likewise, breach of implied warranty is not available as a theory of recovery for personal injury. *Id.*; *see, e.g., Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 203–06 (5th Cir. 2001) (affirming the district court's dismissal of a fraud claim and other tort claims not among the exclusive theories of liability in the LPLA). Thus, to the extent that Defendants are found to be manufacturers of the product at issue, the non-LPLA claims against them should be dismissed.

## V.    Theories Outside the LPLA

As discussed above, if it is later determined that Defendants are not the manufacturer under the LPLA, then Plaintiffs' non-LPLA claims will not be excluded on that basis alone; therefore, it is necessary for the court to determine whether Plaintiffs' allegations are sufficient to state these claims.

### a)    Strict liability

In Count II, Plaintiffs allege that Defendants are strictly liable for the damages caused by their failure to warn and their defective design. Even if Defendants are not found to be a manufacturer, these claims must be dismissed. "A non-manufacturing seller of a defective product is not responsible for damages in tort absent a showing that he knew or should have known that the product sold was defective." *Jones v. Employers Mut. Liab. Ins. Co.*, 430 So.2d

357, 359 (La.App.2d. Cir. 1983) (emphasis added). This is clearly a negligence standard,

meaning that strict product liability claims do not exist for a non-manufacturing seller. *See*

*Kennedy*, *supra*, at 573.[5] Consequently, if Defendants are found not to be a manufacturer,

Plaintiffs' strict liability claims will fail as a matter of law.

b)   Breaches of Express and Implied Warranties

Counts III and IV of Plaintiffs' complaint assert causes of action against Defendants for

breaches of express and implied warranties. However, Plaintiffs' claims for express and implied

warranty are governed by Louisiana's redhibition statute, and cannot be maintained as a separate

claim outside of same. *See In re Ford Motor Co. Vehicle Paint Litigation*, 1996 WL 426548

(E.D. La. 1996) ("Under Louisiana law, claims for breach of warranty cannot be asserted outside

the redhibition statute."). Plaintiffs' independent claims for breach of warranty fail as a matter of

law. Since Plaintiffs are entitled to plead all possible theories of liability, the court will analyze

any potential claims Plaintiffs might have under Louisiana's redhibition statute.

c)   Redhibition

Under Louisiana law, a buyer has a warranty "against redhibitory defects, or vices, in the

thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient

that it must be presumed that a buyer would not have bought the thing had he known of the

defect." LA. CIV. CODE. art. 2520. Such a defect may give a buyer the right to obtain rescission of

the sale, or, if the buyer would have still bought the product but for a lesser price, a reduction of

---

[5] A seller of a product may, in many instances, be subject to the LPLA. *Kennedy*, *supra*, at 573–76. However, "pure" sellers of a product, meaning those that do not fit into any category of sellers described in the LPLA, are not subject to the LPLA but rather are subject to the same standard that was applied to sellers prior to the enactment of the LPLA, which is essentially a negligence standard. *Kennedy*, *supra*, at 573.

the purchase price. *Id.* If a seller is deemed to be in "bad faith," a buyer can also recover damages

and attorneys' fees. LA. CIV. CODE art. 2545. As is made clear by the Louisiana Civil Code,

recovery under a theory of redhibition is limited to purely economic loss and not recovery for

personal injury. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).

Although Plaintiffs do not explicitly allege economic loss under a redhibition theory, such

damages are generally alleged and that is sufficient to state a claim for the purposes of a 12(b)(6)

motion.[6] Given that Plaintiffs' petition states a claim that the product in question contained a

defect, and finding that other courts have allowed plaintiffs to proceed with redhibition claims

under similar circumstances, the undersigned recommends that the Court preserve Plaintiffs'

redhibition claim for further proceedings. *See Harris v. Merck & Co., Inc., et al.*, 2012 WL

5384720 (Nov. 1, 2012) (permitting a redhibition claim by a plaintiff who took prescription

medication as prescribed by her doctor against a drug manufacturer).

Moreover, this claim can be asserted whether Defendants are considered manufacturers or

not. Plaintiffs' claim for damages resulting from a redhibitory defect are not barred by their

separate claims under the LPLA for personal injury.[7] *See De Atley v. Victoria's Secret Catalogue,*

---

[6] Plaintiffs seek "other economic damages in an amount to be determined at trial of this action." [doc. # 1, p. 16].

[7] Courts have also concluded that "generally, economic loss claims by buyers fall under redhibition, and personal injury claims fall under the LPLA." *TruSouth Oil, LLC v. Burlington Ins. Co.*, 2012 WL 4483465 *5 (W.D. La. Sep. 28, 2012). *See also In re Ford Motor Co. Vehicle Paint Litig.*, 1996 WL 426548 (E.D. La. Jul.30, 1996) (Vance, J.) ("The LPLA . . . permits a claimant to seek recovery under warranty principles found in Louisiana's redhibition laws for 'damage to the product itself and economic loss arising from deficiency in or loss of use of the product.' When those damages are not recoverable in redhibition, they may be sought against the product's manufacturer under the LPLA. However, the LPLA contains the exclusive tort theories of recovery against a manufacturer for damage caused by its product."). "A claimant may have against the manufacturer both an action for injury under the LPLA and an action in redhibition for damage to the product itself

*LLC*, 2004–0661 (La.App. 4 Cir. 5/14/04), 876 So.2d 112, 115 ("Courts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss."). Therefore, Plaintiffs' allegations in their complaint are sufficient to assert a plausible claim for damages under the law of redhibition.

<u>d)</u>      <u>Fraudulent Misrepresentation/Omission</u>

Plaintiffs assert a claim for fraudulent misrepresentation in Count V of their complaint, based on Defendants' allegedly express misrepresentations that were relied upon in purchasing Defendants' product. [doc. # 1, p. 13]. Louisiana Civil Code article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction." LA. CIV. CODE art. 1953. An element of a Louisiana claim for fraudulent misrepresentation is justifiable reliance. *See Abbott v. Equity Group, Inc*., 2 F.3d 613, 624 (5th Cir. 1993); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 n. 33 (5th Cir. 1988).

Plaintiffs have arguably satisfied the element of justifiable reliance. They claim that Defendants made express misrepresentations and failed to disclose material facts with the intent to induce consumers to act in reliance by purchasing Defendants' product. However, Plaintiffs' claims are conclusory and as Defendants note, "the original complaint contains no specific statements about what was presented and/or withheld from the FDA, Plaintiffs, or any medical

---

and for economic loss including attorney's fees related to the damage to the product and the economic loss." WILLIAM E. CRAWFORD, 12 LOUISIANA CIVIL LAW TREATISE § 16:11 (2d ed. 2013).

provider, let alone who made the statement, when and where." [doc. # 25, p. 5].[8]

Plaintiffs' allegations of fraud implicate the heightened pleading requirements of FED. R. CIV. P. 9(b). *See Conerly Corp. v. Regions Bank*, 2008 WL 4975080, at *10 (E.D. La. 2008) (*citing Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting FED. R. CIV. P. 9(b)).

The Fifth Circuit interprets Rule 9(b) strictly, requiring plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (*citing Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).[9]

In this case, Plaintiffs complaint is insufficient to satisfy the heightened Rule 9(b) standard for fraudulent misrepresentation. Plaintiffs' conclusory allegations set forth in their original and amended complaints fail to state a claim for fraudulent misrepresentation.

e)      Loss of Consortium

Count VI of Plaintiffs' complaint asserts a claim for loss of consortium, specifically that

---

[8] Plaintiffs' amended complaint does not cure these deficiencies. *See* [doc. # 15].

[9] State–law fraud claims, such as the one alleged by plaintiffs here, are subject to the pleading requirements of Rule 9(b). *Douglas v. Renola Equity Fund II, LLC*, 2014 WL 1050851, at *4 *1 (E.D. La. Mar. 14, 2014) (*citing Dorsey*, 540 F.3d at 339).

Plaintiff Darryl Rayford was "deprived of the services, society, companionship, consortium, and support of plaintiff, Audrey Rayford." [doc. # 1, p. 15]. Defendants argue that if they are defined as a manufacturer under the LPLA, the above damages sought must also be dismissed along with the other state law claims addressed above. *See McBride v. Medtronic, Inc.*, 2013 WL 3491085, at *2 (W.D. La. July 10, 2013) ("There being no original Louisiana law claims remaining against Medtronic, there can be no derivative loss of consortium claim in this case."). However, regardless of whether Defendants are considered manufacturers or sellers, the remaining claims both under the LPLA and for redhibitory defects under La. Civ. Code art 2025 are in fact state law claims, and Mr. Rayford's derivative claim for loss of consortium therefore remains viable. Defendants' motion to dismiss Count VI of Plaintiffs' complaint should be DENIED.

<u>f)</u>     <u>Punitive/Exemplary Damages</u>

Count VII of Plaintiffs' complaint asserts a claim for punitive damages. Exemplary or punitive damages are not recoverable under Louisiana law unless expressly provided for by statute. *Albert v. Farm Bureau Ins., Inc.*, 940 So.2d 620, 622 (La. 2006) (citation omitted). It is manifest that Plaintiffs' complaint does not implicate the two specific circumstances in which exemplary damages are authorized under Louisiana law. *See*, LA. CIV. CODE arts. 2315.4 and 2315.7.

Plaintiffs argue that under LA. CIV. CODE art. 3546, the court is authorized to award punitive damages if such damages are authorized by the law of the state where the injurious conduct occurred and by the law of the place of domicile of the defendant who causes the injury. Plaintiffs contend that California law and/or Massachusetts law applies with regard to punitive/exemplary damages, because "the conduct is alleged to have occurred at the corporate

level in the State of California and/or Massachusetts, where defendants are domiciled." [docs. # 16, p. 8; # 1, p. 15].

However, Article 3546 expressly excludes products liability claims from its scope and does not apply to Plaintiffs' claim for punitive damages. *See* LA. CIV. CODE art. 3545 cmt. (a). Rather, Plaintiffs' claim is governed by Article 3545, which unambiguously provides that Louisiana law governs "liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive," when the injury is sustained in Louisiana by a Louisiana domiciliary or resident or when the product was manufactured or acquired in this state and caused injury to a Louisiana domiciliary. *See* LA. CIV. CODE art. 3545.

Plaintiffs allege that Ms. Rayford had the procedure done in Louisiana, that she was injured in Louisiana, and that she was a domiciliary of Louisiana. Consequently, Article 3545 governs Plaintiffs' claim. Therefore, because Louisiana law expressly prohibits recovery of punitive damages for product liability claims, *see supra*, Defendants' motion to dismiss Count VII should be GRANTED.

## Conclusion

For the reasons stated above,

The  Motion to Strike the Amended Complaint [Doc.# 21] is **DENIED**

**IT IS RECOMMENDED** that the motion to dismiss for failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6) [doc. # 8], filed by defendants, Karl Storz Endoscopy of America, Inc. and Karl Storz Endovision be **GRANTED IN PART**, in favor of both defendants **to the extent they are sued as Manufacturers**, **DISMISSING** plaintiffs' LPLA claims for a  manufacturing defect, as well as Plaintiffs' non-LPLA claims for strict liability,

breach of express and implied warranty, fraudulent misrepresentation, and punitive damages, and **DENIED** as to Plaintiffs' claims under the LPLA for defects in design, inadequate warning, and express warranty, as well as their non-LPLA claims under redhibition and Mr. Rayford's claim for loss of consortium.

IT IS FURTHER RECOMMENDED that the motion to dismiss, be **GRANTED IN PART**, in favor of both defendants, **to the extent that they are sued as non-manufacturer sellers**, **DISMISSING** plaintiffs' claims under the LPLA, their non-LPLA claims for strict products liability, breach of express warranty, breach of implied warranty, and punitive damages, and **DENIED** as to Plaintiffs' claims under redhibition.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

In Chambers, at Monroe, Louisiana, this 22nd  day of June, 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE